UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-60698-CIV-MARRA/JOHNSON

MELISSA C. CROSS, a natural person,

Plaintiff,

vs.

THE QUALITY MANAGEMENT GROUP, LLC
DEFINED BENEFIT PENSION PLAN, and
THE QUALITY MANAGEMENT GROUP, LLC,
a Florida limited liability company,

Defendants.
_____/

**OPINION AND ORDER**

This cause is before the Court upon Plaintiff's Motion for Costs (DE 30); Defendants' Verified Motion for Attorney's Fees (DE 34) and Plaintiff's Verified Motion for Attorney's Fees (DE 35). The Court has carefully considered the motions and is otherwise fully advised in the premises.

Plaintiff Melissa Cross ("Plaintiff") filed this action pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1002 et seq. on May 3, 2010. (DE 1.) Plaintiff alleged in the Complaint that she was vested in the Defendant pension plan, but there was a dispute as to the extent to which she was vested. (Compl. ¶ 18.) Specifically, the Complaint states that Defendants' position is that Plaintiff is 60% vested in the pension plan whereas Plaintiff's position is that she is 100% vested in the pension plan. (Compl. ¶ ¶ 29, 32.)

According to Defendants, the effective date of the pension plan is December 1, 2001 and the vesting computation period is the plan year. The plan year begins on December 1 and ends

November 30. Employees become vested in pension benefits under the plan based on years of service (defined as completion of at least 1,000 actual hours of service within the plan year) as follows:

| Years of Service | Percentage Vested |
| --- | --- |
| 0-1 | 0% |
| 2 | 20% |
| 3 | 40% |
| 4 | 60% |
| 5 | 80% |
| 6 | 100% |

Defendants claim that Plaintiff was terminated from employment effective September 11, 2005. (Karl Cross Decl. ¶ ¶ 3-7, DE 34-1; September 2, 2005 termination letter, Ex. B, DE 34-1.)[1]

According to Plaintiff, she believed that she was 100% vested in the plan based on her receipt of pay checks from Quality Management Group, LLC from 2001 through September 2006 coupled with the fact that, prior to September 2006, no one told her that her employment had been terminated. (Melissa Cross Decl. ¶ ¶ 4, 6, DE 40-1.)  Ms. Cross supplies tax records in support of her position and states that she never saw the September 2, 2005 termination letter until 2010, when her lawyer received it as part of the instant litigation. (Melissa Cross Decl. ¶ 6; Tax Records, DE 40-1.)  In addition, Ms. Cross states that, based upon her understanding of the marital separation agreement she entered into with her former husband, she believed Mr. Cross would not challenge her 100% vesting in the pension plan. (Melissa Cross Decl. ¶ 8.)  In connection with litigation in state court, Ms. Cross filed a response to Defendants' motion to

---

[1] Mr. Cross is the trustee of Quality Management Group LLC Defined Benefit Pension Plan and is also Plaintiff's ex-husband. (Karl Cross Decl. ¶ ¶ 1, 8.)

compel compliance with the marital settlement stating that she is at least 80% vested in the pension plan and discovery is necessary to determine whether she is 100% vested. (Ex. A, DE 38-1.)

Eventually, the parties entered into a settlement agreement which provided Plaintiff a distribution based upon a 75% vesting in the plan. The settlement agreement provided that this Court would determine the issue of attorney's fees. (DE 28.)  Defendants now move for an award of attorney's fees, arguing that a settlement of 75% is an achievement of some success on the merits making them eligible for an award of fees. Plaintiff also claims some success on the merits and notes that prior to the instant lawsuit being filed Defendants' claimed she was only entitled to a determination of 60% vesting.  Thus, the settlement resulted in Plaintiff recovering an additional $40,358.00.

In an action under ERISA "by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party," 29 U.S.C. § 1132(g)(1).  Under this provision, the Court has broad discretion to award fees and costs "as long as the fee claimant has achieved 'some degree of success on the merits.' " Hardt v. Reliance Standard Life Ins., Co., 130 S. Ct. 2149, 2152 (2010) (quoting Ruckelshaus v. Sierra Club, 463 U.S. 680, 694 (1983)). Once that requirement is satisfied, the Court may consider a five-factor test developed prior to Hardt in determining whether an award of fees and costs is appropriate.[2] Id. at 2158 n.8. Those factors are

---

[2] It is appropriate for courts to consider awards of attorney's fees and costs in ERISA cases, even when the merits of the dispute has been resolved by way of settlement. See, e.g., Flores v. Life Ins. Co. of North Am., 770 F. Supp. 2d 768, 771 (D. Md. 2011); Taaffe v. Life Ins. Co. of North Am., 769 F. Supp. 2d 530, 535 (S.D.N.Y. 2011).

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions.

Iron Workers Local No. 272 v. Bowen, 624 F.2d 1255, 1266 (5th Cir.1980) (footnote and citations omitted).[3]

Turning first to Defendants' motion for attorney's fees, in the exercise of the Court's discretion, the Court finds that Defendants are not entitled to fees. After considering the record in its entirety, the Court finds that there was a legitimate dispute between the parties. For example, while Defendants relied upon a termination letter and the testimony of Mr. Cross to demonstrate Ms. Cross' employment ended in September of 2005, Ms. Cross averred that she received paychecks through September 2006 and buttressed these statements with tax records. Therefore, there was a basis for Plaintiff's claim of 80% vesting. Furthermore, in the end, Plaintiff received 15% more than that to which Defendants initially claimed she was entitled.

The Court also finds that Plaintiff is not entitled to any attorney's fees or costs. Based upon Defendants' description of the plan documents, which Plaintiff does not contest, the Court finds that Plaintiff did not have a legitimate claim to 100% vesting in the pension plan. Had Plaintiff not sought 100% vesting, it is likely that this case would have swiftly settled. Plaintiff's reliance on her marital settlement agreement for an interpretation of a pension plan governed

---

[3] The decisions of the United States Court of Appeals for the Fifth Circuit, as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date, shall be binding as precedent in the Eleventh Circuit, for this court, the district courts, and the bankruptcy courts in the circuit. Bonner v. Pritchard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

under ERISA was simply untenable.

With respect to the five factor test, the Court makes the following findings. Neither party acted in bad faith. Defendants sought to defend against a claim for 100% of vesting that was not legitimate and Plaintiff legitimately sought more than 60% of vesting based on her employment records. Secondly, both parties have an ability to pay fees. Next, the Court finds that the third factor of deterrence does not factor into this analysis. Nor does the Court find that either party sought to benefit all participants and beneficiaries of an ERISA plan or resolve a significant legal question regarding ERISA itself. Lastly, as discussed supra, both parties' positions had some merit.

Hence, for the reasons stated herein, it is hereby **ORDERED AND ADJUDGED** as follows:

1) Plaintiff's Motion for Costs (DE 30) is **DENIED.**

2) Defendants' Verified Motion for Attorney's Fees (DE 34) is **DENIED**.

3) Plaintiff's Verified Motion for Attorney's Fees (DE 35) is **DENIED**.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 26th day of September, 2011.

_____
KENNETH A. MARRA
United States District Judge